## COMMONWEALTH vs. PATRICK HIGGINS.

Bristol. October 20, 1986. — February 25, 1987.

Present: ARMSTRONG, KAPLAN, & PERRETTA, JJ.

*Practice, Criminal,* Defendant pro se, Assistance of counsel, Default, "Two-tier" court system. *Constitutional Law,* Assistance of counsel, Waiver of constitutional rights. *Waiver.*

At a bench trial of criminal complaints in a District Court the judge did not abuse his discretion in declining to appoint substitute counsel at the defendant's last minute request, where there were positive indications that the defendant understood the consequences of waiving counsel and where his recalcitrant conduct before the date of trial could be considered as amounting to waiver. [555-557]

In the two-tier system of District Court criminal trials, a defendant's exercise of his absolute right to a trial de novo in a jury session would have the effect of wiping out any errors, "even if of constitutional magnitude," occurring at his bench trial. [557-558]

A judge correctly concluded that a criminal defendant's failure to appear on two successive dates for de novo proceedings in a District Court constituted a "solid" default for purposes of G L. c. 278, § 24, under which the judge reimposed the sentence the defendant had received at his bench trial. [558-559]

In the circumstances of a District Court default hearing, the judge, who was aware of the defendant's history of self-representation, was warranted in finding that the defendant had made an effective waiver of counsel at the hearing, and neither a written waiver by the defendant nor a colloquy on the record was obligatory. [559-560]

COMPLAINTS received and sworn to in the Fall River Division of the District Court Department on December 27, 1984, January 9, 1985, and February 21, 1985, respectively.

The cases were heard by *John H. O'Neil,* J., and, on appeal to the jury session, a default was ordered by *Robert L. Anderson,* J.

*Thomas C. Federico,* Committee for Public Counsel Services, for the defendant.

*Dana A. Curhan,* Assistant District Attorney, for the Commonwealth.

The defendant, pro se, submitted a brief.

KAPLAN, J. *Outline.* Upon bench trial in District Court, the defendant Patrick Higgins was convicted of three "bad check" charges, namely: (1) larceny of property over $100, G. L. c. 266, § 30; (2) larceny by check, G. L. c. 266, § 37; (3) larceny of property $100 dollars or less, G. L. c. 266, § 30. He had initially signed a waiver of right to counsel on the first charge, but counsel was later appointed to represent him on this and the second charge. On the third charge, the defendant signed a waiver, and counsel was not thereafter requested or appointed. Just before trial of the three charges on June 24, 1985, counsel appointed to try the first two cases renewed a motion to withdraw that he had earlier made.[1] The judge allowed counsel's motion, finding that the defendant had failed to cooperate with counsel: he had missed scheduled appointments and made no effort to confer with him. Thereupon the defendant asked for the appointment of new counsel to represent him on the two charges. The request was denied and so was a repeated request "for the reason that the motion to withdraw was allowed." Trial proceeded with the defendant representing himself. The judge found him guilty of all charges and sentenced him.[2]

On the same day, June 24, 1985, the defendant appealed the three convictions to the jury-of-six session. A court form, which he signed, duly informed him of the transfer of the cases for trial de novo, and directed him to appear in District Court on July 24, 1985.[3] He failed to appear as directed that day and a capias issued. The clerk notified him by mail that he should

---

[1] This motion had been considered on March 20, 1985, but the court did not act on it at the time, indicating that it was to be re-marked.

[2] The defendant was sentenced to concurrent terms in a house of correction of two years for larceny over $100, two years for larceny by check, and one year for larceny under $100.

[3] The docket indicates that this appearance was for appointment of counsel. On July 22, 1985, the defendant filed in District Court pro se a purported notice of appeal to the "state appellate court." This of course was without effect.

appear on August 5, 1985, for hearing at the jury-of-six session. Again the defendant absented himself and he was defaulted. Acting pursuant to G. L. c. 278, § 24, the judge on that date imposed the sentences previously imposed, and issued a warrant for the defendant's arrest.

On September 9, 1985, the defendant was arrested in Rhode Island on a fugitive-from-justice complaint issued by the Rhode Island District Court on the basis of the Massachusetts warrant, and, having waived extradition, he was returned to the Commonwealth. A hearing then followed in District Court on September 11 to decide whether the default should be removed (with consequent vacation of the sentences). The judge told the defendant he was entitled to counsel, and offered to allow him time to secure counsel. However, the defendant chose to proceed pro se. He did not assert indigency or request appointment of counsel. The judge declined to remove the default and reimposed the sentences.

Pro se motions followed: to revise and revoke sentences and to reconsider the denial of that motion, both denied; then for release from unlawful detention. Upon the latter motion, the defendant complained that he had been denied counsel at his bench trial and at the default hearing in violation of his constitutional rights. After hearing, in which the defendant continued to represent himself, the judge on December 12, 1985, denied the motion with findings in substance that the defendant had represented himself at the default hearing by his own choice; that he had a long history of proceeding pro se on many other charges of like offenses; that he was a recalcitrant who for his own ends had deliberately failed to cooperate with appointed counsel and to appear in court as required.

Upon his pro se appeal to this court, now with help of counsel,[4] the defendant contends that his bench trial convictions

---

[4] This court offered the defendant counsel to argue the appeal. An order of August 21, 1986, stated that "[i]n view of the claims of the defendant and . . . the rulings below," the defendant was requested to indicate whether he wanted to have counsel appointed for him "on the express understanding that he intends to cooperate with counsel." The defendant made such a request on August 29; on September 2 the court appointed the Committee

were invalid because he was denied counsel despite his request, and that this invalidated the sentences ultimately imposed; further, that his default at the jury-of-six session was not "solid," and anyway should be held ineffective because he was not adequately advised of the risks of proceeding pro se when he waived counsel at the default hearing.

In dealing with these contentions we supplement the statement set out above with additional record facts where necessary.

*Regarding the bench trial.* Considered without regard to background or context, the judge's refusal to appoint successor counsel after the permitted withdrawal of original appointed counsel, so that the defendant had to proceed pro se on the first and second charges, looks like an infringement of the right to counsel. The antecedent facts, however, put a different light on the matter, for the defendant's conduct before the date of trial may be read as amounting to a waiver. See *Faretta* v. *California,* 422 U.S. 806, 818-821 (1975); *Commonwealth* v. *Lee,* 394 Mass. 209, 216 (1985).

In the colloquy preceding the judge's ruling, the defendant said he hadn't "bothered to go forward" with counsel because he "assumed [counsel] had lost interest in representing me." Taking the defendant at his word, he appears to have acquiesced in counsel's ultimate departure from the proceedings, and reverted to self-representation. See *Commonwealth* v. *O'Brien,* 380 Mass. 719, 722 (1980). He had missed scheduled meetings during February and March, and counsel's motion to withdraw was first heard in March. Knowing that the cases were called for June 24, the defendant took no step to request substitute counsel. For decisions, in a variety of circumstances, holding that defendants, facing imminent trial, have waived rights by failing seasonably to retain or secure appointment of counsel, see *Commonwealth* v. *Delorey,* 369 Mass. 323, 330 (1975); *Glenn* v. *United States,* 303 F.2d 536, 540-541 (5th Cir. 1962);

for Public Counsel Services; on September 10 the defendant asked to withdraw his request; on September 30 he wrote that he wanted to accept counsel. The Committee has filed a supplemental brief.

*Nunn* v. *Wilson,* 371 F.2d 113, 117-118 (9th Cir. 1967); *United States* v. *Rodriguez Vallejo,* 496 F.2d 960, 964-965 (1st Cir.), cert. denied, 419 U.S. 965 (1974). In that view, the defendant's requests for counsel may be treated as dubious last-minute efforts to retract his decision to represent himself (thereby postponing the day of reckoning), the judge's negative reaction being reviewable only for abuse of discretion, which should not be found here. See *Commonwealth* v. *Jackson,* 376 Mass. 790, 795-797 (1978); *Commonwealth* v. *Appleby,* 389 Mass. 359, 364-370 (1983).

Such a waiver may, however, be held ineffective if the defendant can show by a preponderance of the evidence that he did not have a fair (it need not be a professionally accurate) understanding of what the waiver meant or entailed. See *Maynard* v. *Meachum,* 545 F.2d 273, 277-279 (1st Cir. 1976). See also *Commonwealth* v. *Lee,* 394 Mass. at 218. An inquiry on the record concerning the defendant's understanding of the implications of waiver, though preferred, was not required, see *Lee,* 394 Mass. at 218; *Maynard,* 545 F.2d at 278, 279; a finding that he was knowledgeable may rest on a complex of factors. See *Commonwealth* v. *Appleby,* 389 Mass. at 368. Here we have positive indications of an adequate understanding. The defendant had intimate experience of criminal procedures: his criminal record was extensive and included a number of charges like those at bar. See *Commonwealth* v. *Hawkins,* 17 Mass. App. Ct. 1041 (1984); *Maynard,* 545 F.2d at 279. At trial of the third charge,[5] the defendant moved to compel discovery, called and examined a witness, and moved for a required finding of not guilty. In conducting the other cases, the defendant moved to sequester witnesses, objected to a prosecution motion to amend a complaint, and cross-examined

---

[5] As noted, in the third case there was a signed waiver not superseded at any time by appointment of counsel. Except for a cavil that no certificate of the judge under Mass.R.Crim.P. 8(e), 378 Mass. 858 (1979), appears of record, this waiver seems unimpeachable; and, if the defendant had enough understanding for that waiver, it may well hold for the other cases tried together.

Commonwealth witnesses. See *Fillippini* v. *Ristaino,* 585 F.2d 1163, 1167 (1st Cir. 1978).[6]

We conclude that a compelling case is made for holding in the particular circumstances that the judge did not abuse his discretion in declining to appoint substitute counsel at the defendant's last-minute request. Further, the defendant understood the consequences of the waiver involved.

*Regarding the transfer proceedings.* Entirely apart from the conclusion reached in the foregoing discussion, the defendant's appeal fails because the transfer of the cases to the jury-of-six session wiped out errors, if any, connected with the bench trial, and there was no error in the proceedings upon the defendant's later default.

First. In our two-tier system, a defendant who elects to have a bench trial assumes the risk that "a considerable variety of errors might occur from which he could not obtain any relief." *Lydon* v. *Commonwealth,* 381 Mass. 356, 363, cert. denied, 449 U.S. 1065 (1980). He does so, however, with the assurance that "virtually nothing can happen to a defendant at a first-tier trial that he cannot avoid" by exercising his absolute right to trial de novo. *Boston Municipal Court* v. *Lydon,* 466 U.S. 294, 310 (1984). First-tier errors, "even if of constitutional magnitude," do not survive as a basis for complaint once the case has moved to the second tier. See *Commonwealth* v. *Lupo,* 394 Mass. 644, 646 (1985). To the same effect, see *Lydon,* 381 Mass. at 363; *Foley* v. *Lowell Div. of the Dist. Court Dept.,* 398 Mass. 800, 803-804 (1986). Cf. *Ludwig* v. *Massachusetts,* 427 U.S. 618 (1976).

Much in point is *Hutson* v. *Wareham Dist. Court,* 552 F. Supp. 974 (D. Mass. 1982), where a defendant sought habeas corpus, after appealing to the jury-of-six but before trial de novo, on the ground that he had been compelled to proceed to

---

[6] Neither side has referred to District Court Department Supplemental Rules of Criminal Procedure, rule 4, "Advice as to Rights" (1981), which states that an unrepresented defendant shall be advised that he has rights to cross-examine, to offer testimony by himself or other witnesses, and to be free of prejudice if he does not testify. It is evident that the defendant was aware of the relevant rights.

a bench trial without retained counsel. Denying the writ, the court said, "Massachusetts' regular appellate criminal process, the two-tier trial system, adequately protects petitioner's constitutional rights," so that he had not exhausted available State remedies (consisting of trial de novo and possible appeal therefrom). The petitioner argued that subsequent process would not remedy the denial, in first instance, of his right to counsel. The court said: "[E]ven though petitioner's contention [that his bench trial was constitutionally defective] may well be correct, the trial de novo system is designed for curing trial errors, including those trial errors of constitutional dimension." *Id.* at 977-978 (citations omitted).

Second. A decision to declare a defendant in default within the meaning of G. L. c. 278, § 24, is ordinarily left to the discretion of the judge. Because of the consequences to a defendant, however, the decision may not be "casual and capricious"; it should be founded on a "solid" default of appearance. *Commonwealth* v. *Coughlin,* 372 Mass. 818, 821 (1977). See *Commonwealth* v. *McVicker,* 20 Mass. App. Ct. 713, 715-716 (1985). Here the defendant was required to be in court on two successive dates for de novo proceedings. Upon his request of June 24 for retrial he was tendered and signed a notice of "Transfer of Criminal Cases" which warned that failure to appear on July 24 could result in loss of the right to retrial and in imposition of the original sentences. The form provided adequate notice. *McVicker,* 20 Mass. App. Ct. at 714-715. The defendant failed to appear on the stated date. Thereupon he was sent a letter requesting his appearance on August 5 for a hearing. Again he defaulted and was brought in finally by fugitive warrant.

Seeking excuse for his defaults, the defendant argues, first, by a misreading of Mass.R.Crim.P. 18(a) (3), 378 Mass. 888 (1979), that, although he was called on to appear on successive occasions, he was really entitled to stay away.[7] Then he points

---

[7] The rule provides that "[a] defendant need not be present . . . at any proceeding where evidence is not to be taken." This does not give the defendant a right to absent himself where the court has required him to attend; rather it defines the kind of proceeding which can go forward in his

to his so-called notice of appeal (see n.3 above) and says he thought this would stay proceedings in District Court. But at the hearing on default he was unable to name "the clerk of the Appellate Court" who supposedly offered him that advice. Again, he said he was in Rhode Island before a court there on July 19, when he was released on his own recognizance with an order not to leave the State. He conceded he could have asked that court's permission to return to Massachusetts, but did not do so. And of course he did not inform the District Court of his supposed problem. The judge held the defendant to be in default (i.e., declined to remove the recorded defaults), stating that he believed the defendant's failures to appear were intentional. Default was "solid" and the judge's decision was correct. Reimposition of sentence followed.

The defendant attempts to undo the decision by impeaching his self-representation at the hearing on default. The court informed him at the time that he was entitled to the assistance of counsel. He said he wanted to represent himself. A written waiver was not filed (it was not indispensable, cf. *Commonwealth* v. *Appleby,* 389 Mass. at 368) but the judge later entered a finding confirming that the defendant had made his choice.[8] As to any claim that the waiver was ineffective because not given knowledgeably or intelligently, what was said above about the defendant's previous experiences and his appreciation of his situation and choices applies here as well. A formal colloquy on the record would have been helpful, but, as noted, it was not obligatory. The judge who conducted the default

---

absence. Once summoned, the defendant was obliged to appear or suffer default with its consequences. See *Commonwealth* v. *Preston,* 10 Mass. App. Ct. 807, 809-810 (1980). Contrast *Commonwealth* v. *McVicker,* 20 Mass. App. Ct. at 717 (by nonappearance at a scheduled proceeding upon a pretrial motion made for his own benefit, a defendant may forfeit the motion without incurring default under G. L. c. 278, § 24).

[8] In his pro se brief on appeal, the defendant asserts that he requested appointment of counsel but the judge refused, finding him not indigent. There is no record support for the assertion. Upon the defendant's later "motion for release from unlawful incarceration," the judge found on the basis of the tape recordings of the September 11 hearing and his own memory that the defendant wished to represent himself. Counsel's brief on appeal does not dispute this.

hearing was well aware of the defendant's history of self-representation. Hearing the defendant's motion for release from incarceration, the judge said he had "recommended that you have counsel all along, but you insisted upon representing yourself, in spite of the fact that I told you a man who represents himself is a fool for trying. Didn't I tell you that many times?" The defendant answered, "On the other cases, yes, your Honor."

We note, with regret, that an assistant district attorney saw fit to hand up at the default hearing (without objection) a copy of an eight-month-old local newspaper article detailing the defendant's "avocations" of "passing bad checks, practicing law and making a mockery of the justice system." The attorney perhaps thought his gesture was in the spirit of the informality of the hearing. We do not condone it on that account. But the defendant's experience in the courts, with its bearing on the questions of his understanding and his excuses for failure to appear, was a matter of record, already known to the judge; and we do not think the judge could have been overcome by the story in the newspaper.[9]

To conclude. That the defendant engaged in on-and-off or baiting tactics would not justify the court's subjecting him to unfair procedures even if it was his aim to induce just that result with the hope of undermining the convictions. Although at certain points more formal handling of the defendant would have been desirable, we are persuaded that he was not ill-treated and that the convictions should stand.

*Judgments affirmed.*

---

[9] For a pro se defendant, as well as for others, a failure to object imports the standard question whether the supposed error created a "substantial risk of miscarriage of justice," see *Commonwealth* v. *Henley,* 1 Mass. App. Ct. 564, 569 (1973), and here the answer is negative.