COMMONWEALTH *vs.* JUAN ESPINOZA.

No. 89-P-623.

Essex. October 12, 1989. - November 20, 1989.

Present: DREBEN, KASS, & WARNER, JJ.

*Practice, Criminal*, Default, Appeal to jury session, Assistance of counsel. *Interpreter*.

In the case of a criminal defendant who conceded that he understood he was to attend court at 9:00 A.M. on the day appointed for his de novo trial in a District Court jury-of-six session, but who did not appear until about 12:20 P.M., the judge acted within his discretion in declaring the defendant in default and, pursuant to G. L. c. 278, § 24, reinstating the sentence that had been imposed on the defendant at his bench trial. [68-69]

Although a judge erred in permitting a criminal defendant's attorney to withdraw from the case shortly after the defendant failed to appear for trial, without first affording the defendant a hearing and an opportunity to secure other counsel, the error was cured by the rehearings the defendant subsequently received on the matters before the court. [69-70]

Any deficiency in the conduct of a criminal defendant's default hearing in a District Court entitled the defendant to no relief beyond that afforded by the two rehearings he received. [70-71]

The issue of the sufficiency of the evidence to convict a defendant at a District Court bench trial was lost by the defendant's failure to appear at the time appointed for his de novo trial in a jury-of-six session. [71]

COMPLAINT received and sworn to in the Lawrence Division of the District Court Department on March 19, 1987.

On appeal to the jury session of the Haverhill Division, sentence was imposed by *William H. Sullivan*, J., following default by the defendant. Motions for revocation of the sentence and for release from confinement were heard by *Sullivan*, J.

*Andrew Silverman*, Committee for Public Counsel Services, for the defendant.

*Margaret J. Perry*, Assistant District Attorney (*Emmett J. Ballard*, Assistant District Attorney, with her) for the Commonwealth.

KASS, J. When Juan Espinoza, the defendant, failed to show up on the assigned date for trial in a District Court jury-of-six session, the trial judge declared him in default and, acting under G. L. c. 278, § 24, reinstated the one-year sentence imposed at a bench trial. The primary question on appeal is whether Espinoza's default was a "solid" one, warranting invocation of G. L. c. 278, § 24. See *Commonwealth v. Coughlin*, 372 Mass. 818, 821 (1977).

The relevant facts are procedural. Espinoza was charged with unlicensed carrying of a firearm under his control in a vehicle (G. L. c. 269, § 10[a]). Twice during proceedings leading up to the bench trial, Espinoza failed to appear for pretrial conferences. These would not, ordinarily, be solid defaults, see *Commonwealth v. McVicker*, 20 Mass. App. Ct. 713, 715-716 (1985), although they produced some delay in the bench trial. That trial occurred February 8, 1988, before a judge of the District Court, who found the defendant guilty and pronounced the mandatory one-year sentence. G. L. c. 269, § 10(a). Espinoza exercised his right to "appeal" through a retrial before a jury-of-six session. See c. 218, § 27A, and G. L. c. 278, § 18. That same day, Espinoza signed the customary court form which informed him that his case was being transferred to a jury-of-six session and that failure to appear could result in loss of the right to retrial and imposition of the original sentence. See *Commonwealth v. McVicker*, 20 Mass. App. Ct. at 714-715; *Commonwealth v. Higgins*, 23 Mass. App. Ct. 552, 558 (1987).

Espinoza was present in court for a pretrial conference in the jury-of-six phase on March 10, 1988, and present again on April 14, 1988, the date on which trial had been scheduled. At the latter session, the Commonwealth was not ready to proceed and trial was rescheduled for 9:00 A.M., June 1, 1988.

Espinoza was not in court on the morning of June 1, 1988. After the first call of the case and a short colloquy with the

defendant's lawyer, the judge made allowance for Espinoza's minor tardiness and told defense counsel he would call the case again. When the case was called the second time (the record does not disclose the precise hour), Espinoza still was not there. His lawyer expressed surprise, told the court he knew of no excuse, and requested leave to withdraw "on the basis of [the defendant's] noncooperation with my office and its defense."

Much later — it appears to have been about 12:20 P.M. — Espinoza turned up in the courtroom, but the lawyer he had engaged had long since left. The judge appointed a lawyer who was present in the courtroom, Mr. Scott F. Gleason, to represent Espinoza for purposes of deciding whether a default should be declared. Espinoza was less than fluent in English and communication between him and Mr. Gleason was assisted by a probation officer conversant in Spanish. He realized, Espinoza related through Mr. Gleason, that he was required to be in court at 9:00 A.M. but he had awaited permission of his employer to leave from his job and that was why he was late. Indeed, he claimed to have first been in court around 10:00 A.M., a representation the judge did not credit because Espinoza's retained counsel, Mr. Anthony J. Randazzo, Jr., had been in the courtroom at that time. Dissatisfied with the explanation offered, the judge declared a default and reinstated the District Court sentence.

Thereafter, Espinoza succeeded in securing the capable and persevering services of a staff member of the Committee for Public Counsel Services. There was a hearing on November 16, 1988, at which an interpreter assisted, on a motion to revoke the sentence. The basis of the motion was that the default had not been "solid" because Espinoza had, in fact, appeared and his tardiness, in terms of seeing it as failing to prosecute his appeal, should be viewed in the light of his prompt attendance at the previous call for trial and the pretrial session. The judge was not persuaded. On December 7, 1988, there was a second hearing on a motion for release from unlawful confinement at which the same grounds were elaborated. The District Court judge stuck by his original

conclusion that a solid default had occurred. This appeal followed.

1. *Solidity of the default.* Our cases have settled that a defendant's failure to appear at a jury-of-six proceeding, when attendance is required and the defendant has had notice of the date, may occasion a declaration of failure to "prosecute his appeal" within the meaning of G. L. c. 278, § 24 (as appearing in St. 1978, c. 478, § 305),[1] and consequent reinstatement of a bench trial sentence. *Commonwealth* v. *Coughlin*, at 821. *Commonwealth* v. *Preston*, 10 Mass. App. Ct. 807, 809 (1980). *Commonwealth* v. *Higgins*, 23 Mass. App. Ct. 552, 558 (1987). Compare *Commonwealth* v. *Bartlett*, 374 Mass. 744, 747-748 (1978); *Commonwealth* v. *McVicker*, 20 Mass. App. Ct. at 715-717. Determination of whether the default is solid rests in the discretion of the trial judge, but the decision, which has portentous consequences for a defendant, is not to be arrived at casually or capriciously. *Commonwealth* v. *Coughlin*, 372 Mass. at 821. *Commonwealth* v. *Higgins*, 23 Mass. App. Ct. at 558.

In testing whether the exercise of discretion to declare a solid default has been sound, we consider the conduct of the defendant and the inquiry made by the judge into the circumstances of the defendant's absence. So, for example, a defendant may be forgiven for not appearing in court when neither the court nor the Commonwealth has given notice of the court date at the defendant's correct address. *Commonwealth* v. *Bartlett*, 374 Mass. at 747-748. If, however, the defendant fails to keep a current address on file with the clerk and notice, therefore, misfires, the responsibility falls on the defendant, who may be charged with a solid default. *Commonwealth* v. *Francis*, 374 Mass. 750, 753-754, appeal dismissed, 439 U.S. 805 (1978). *Commonwealth* v. *O'Clair*, 374 Mass. 759, 764, appeal dismissed, 439 U.S. 805 (1978).

---

[1]General Laws c. 278, § 24, provides: "If the appellant fails to enter and prosecute his appeal, he shall be defaulted on his recognizance and the jury-of-six session may impose sentence upon him for the crime of which he was convicted, as if he had been convicted in said court. . . ."

Misapprehension about whether attendance in court is required in the face of notice to appear on a specified date has not been considered an acceptable excuse. See *Commonwealth* v. *Preston*, 10 Mass. App. Ct. at 809-810; *Commonwealth* v. *Higgins*, 23 Mass. App. Ct. at 558-559. But failure to show up for a hearing on a motion to suppress, made for the defendant's benefit, is not a solid default; rather the failure works a waiver of the motion by the defendant. *Commonwealth* v. *McVicker*, 20 Mass. App. Ct. at 716-717.

Espinoza conceded that he understood he was to attend court at 9:00 A.M. on June 1. He argues that he did, after all, turn up, with an explanation for his tardiness and that the explanation was entitled to acceptance in light of his faithful appearance in court on previous occasions. Tardiness for a court appointment can, by itself, be quite sufficient to produce the confusion and delay warned against in *Commonwealth* v. *Coughlin*, 372 Mass. at 821. By 12:20 P.M. Espinoza's lawyer had departed and so, it may be assumed, had the prosecution witnesses and the prosecutor. The court is entitled to protect itself against manipulation of the docket to procrastinate the day of trial. In the instant case, the District Court judge voiced the concern that this was precisely the defendant's design in turning up late. The judge was not required to credit the defendant's explanation — it may well have lacked the ring of plausibility — or, in any event, to accept it. Espinoza knew when he was to be in court and he could not unilaterally decide that his employer's demands, if made, took precedence over those of the court. Although the judge thought that Espinoza turned up late in order to delay the proceedings, there need not be a showing that a defendant's failure to appear was designed to delay or frustrate trial. It is enough if the judge determines that the defendant consciously disregarded the duty to be present.

2. *Randazzo's withdrawal.* Espinoza correctly argues that the jury-of-six session judge erred in granting Mr. Randazzo permission to withdraw from the case as precipitously as he did. Right to counsel presupposes a fair opportunity to secure counsel of one's choice. *Powell* v. *Alabama*, 287 U.S. 45, 53

(1932). *Commonwealth* v. *Dunne*, 394 Mass. 10, 12-14 (1985). *United States* v. *Alvarez*, 816 F.2d 813, 816 (1st Cir. 1987). The right is sufficiently fundamental so that the defendant should be heard on the question, if possible. As events disclosed, the defendant here was not beyond reach for such a hearing.

Mr. Randazzo's abandonment of his client may have been something less than in the highest traditions of the bar. In any event, it was a violation of S.J.C. Rule 3:07, DR 2-110(A)(2), 382 Mass. 774 (1981), which proscribes withdrawal from a case without notice to the client and allowing time for the employment of other counsel.[2]

Although error was involved in permitting Mr. Randazzo to withdraw then and there, that mistake caused Espinoza no prejudice. What the error entitled Espinoza to was a rehearing on the matters before the court: the default and the reinstatement of sentence. See *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 275 (1982). He did receive not one, but two rehearings, at which he was represented by counsel who was able, well prepared, properly zealous, and assisted by an interpreter. To be sure, successor counsel faced the task of making the judge see differently something he had already decided, but that difficulty stemmed more from Espinoza's absence at the critical time than from failures of advocacy.

3. *Other issues.* Two other points which Espinoza has raised are also washed out by the rehearings. The first concerns the effectiveness of Mr. Gleason, because he was appointed on the spot and had only a short time to marshal the facts and learn about any mitigating circumstances. See *Mempa* v. *Rhay*, 393 U.S. 128, 135 (1967); *Osborne* v. *Commonwealth*, 378 Mass. 104, 114 (1979). Mr. Gleason had the additional difficulty, as he put it that day, of a "language barrier." For all that, Mr. Gleason seems to have gleaned the

---

[2]Disciplinary Rule 2-110(A)(2) provides: "In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

basic facts which later counsel was able to present, save for the information about Espinoza's timely appearance at the April 14th trial call. The second point was the absence, as defined in G. L. c. 221C, § 1 (as appearing in St. 1986, c. 627, § 2), of a "qualified interpreter," as required by § 2 of c. 221C in Essex County for "non-English speakers" on June 1, 1988.[3] Assuming, without deciding, that Espinoza was a non-English speaker — his English comprehension was sufficient to enable him to correct Mr. Gleason's argument to the court — the deficiency would have entitled him to no more than the rehearings he received and at which an interpreter was present.

Finally, Espinoza argues that the evidence at the bench trial showed only transitory handling of the firearm in question and was insufficient to warrant a finding of unlawful carrying or control. The argument is fruitless because error in the bench trial, if any, is to be tested by a trial de novo before a jury of six, a right which Espinoza lost through his failure to appear at the appointed day and time.

*Judgment affirmed.*

> *Orders denying motions to revoke sentence and for release from confinement affirmed.*

---

[3] By § 4 of St. 1986, c. 627 (and see St. 1987, c. 465, § 68), the chapter in the General Laws providing for court interpreters for the trial court, c. 221C, became effective in Essex County on July 1, 1987. Elsewhere, the provisions of c. 221C become effective "when certified as appropriate by the chief administrative justice of the trial court in a report to the general court."