COMMONWEALTH *vs.* PAUL PARILLO. No. 90-P-69. October 23, 1990.
*Practice, Criminal*, Default.

Convicted at a bench trial in District Court of possession of a Class A controlled substance, heroin, with intent to distribute (G. L. c. 94C, § 32), of possession of an instrument, a hypodermic needle, adapted for the administration of controlled substances (G. L. c. 94C, § 27), and of assault and battery on a police officer (G. L. c. 265, § 13D), the defendant, after sentence,[1] appealed to the jury-of-six session of the District Court for trial de novo. On August 8, 1989, the day for hearing of motions and trial, the defendant failed to appear as required after a luncheon recess of court. The trial judge defaulted him. Upon the defendant's late appearance, the judge conducted a hearing and, concluding that the defendant's default was "solid" in the sense of *Commonwealth* v. *Coughlin*, 372 Mass. 818, 821 (1977), revoked his bail and imposed the bench-trial sentences pursuant to G. L. c. 278, § 24, as appearing in St. 1978, c. 478,

---

[1]On the heroin conviction, the defendant was sentenced to two years in a house of correction, one year to be served, the balance suspended for two years; and on the other two convictions, ninety-day terms to be served concurrently with the heroin sentence.

§ 305.[2] The defendant appeals to this court to set aside the default and remand for trial. We hold that the judge's rulings were within her discretion and should not be disturbed.

1. The situation as it emerges from the transcript for August 8 and the judge's findings and rulings was in substance as follows. The defendant was in attendance during the morning. His counsel had requested a reporter and the judge undertook to try to furnish one, but none was available at the time. Over objection, the judge and the parties carried on with the tape recording (the customary mode) while dealing with motions,[3] the judge intending if possible to secure a reporter for the trial proper.[4] A motion to suppress drugs, paraphernalia, beeper, and money was heard, with testimony by the arresting officer, and was denied. The judge reserved to the trial a ruling on the defendant's motion to exclude evidence about the condition of the officer after the claimed assault. She denied a defense motion for additional peremptory challenges. The defendant had moved for interrogation of individual jurors for racial bias and had proposed a list of questions. The judge indicated she would consider this matter during the recess for lunch. Motions having been thus handled, the judge said, "1:30 for a jury."

Then there was further talk about finding a stenographer. The clerk of court mentioned the efforts he had made: he said he had spoken to "Debbie" who had spoken to "June" who said she would come in at 2:00 P.M.; Debbie was now going to reach June to have her come in at 1:30 instead. The judge said "All right . . . . The [stenographer] may not be here till 2:00 [;] we're going to try to get her at 1:30." The clerk: "[W]hy don't we shoot for 1:30, Judge?" The judge: "We'll come at 1:30 and, if necessary, we'll just wait till 2:00 for the jury itself, but — and I'll go over the questions at that time." There was short discussion of the voir dire questions, and the court recessed about 12:35 P.M.

The court reconvened at 1:30. The defendant was absent. All others, including a stenographer, were on hand; the jury venire were in the wings. Defense counsel said he did not know where the defendant was; he had last seen him an hour ago in the courthouse. The judge said she had announced 1:30: "I announced it in front of him [the defendant]."

After a pause, the Commonwealth moved for default. The judge remarked that during the luncheon break she had studied the special questions and decided to give some of them (with modifications) to individual

---

[2]"If the appellant fails to enter and prosecute his appeal, he shall be defaulted on his recognizance and the jury-of-six session may impose sentence upon him for the crime of which he was convicted, as if he had been convicted in said court, and, if he is not then in custody, may issue process to bring him into court to receive sentence."

[3]The judge noted that the tape was in good working order.

[4]At that point, the judge thought the organization which normally reported grand jury proceedings would furnish a reporter, "but they are not available until approximately one o'clock, which for purposes of this court, will be two o'clock."

jurors at the sidebar. Before doing so, however, she had to have a colloquy with the defendant,[5] and as this was not possible she would not waste time going over the questions. She declared a default, revoked bail, imposed the bench sentences, and assessed the stenographer's costs on the defendant, noting the pains taken to find a stenographer. All this was of course provisional upon a § 24 hearing. The time was about 1:45. At 2:10 or 2:15 the judge excused the venire (who had been awaiting empanelment since 11:30 A.M. and were ready at 1:30) as well as counsel and the police witness.

At 2:40 or 2:50 the defendant appeared and said he'd been coming to court (presumably referring to past appearances in the case) and was sorry and had been stupid.

2. At the § 24 hearing that afternoon, defense counsel said the defendant told her he thought he had to be back at 2:00; he left the courthouse between 12:45 and 1:00 and went to "Washington Street" to see his children (believing he likely would be going away that day); took a cab to return to court, which got stuck in traffic; asked the driver to pull over and called the clerk shortly after 2:30 (the call was verified by the clerk, who told the defendant to come in immediately).[6]

Upon the record as summarized, the judge was clear that the defendant was told to appear at 1:30. She found his claim of misunderstanding to be "not . . . credible," and in any case he had failed to appear even by 2:00. It was "the defendant's own conduct" that caused his default, and it was a solid default under the statute.[7]

3. Rulings under the statute are discretionary, but are to be made with awareness that a finding against a defendant carries with it the serious consequence of a loss of the de novo trial by jury. Thus it should not be grounded in mere impatience or arrived at casually or capriciously. See *Commonwealth* v. *Coughlin*, 372 Mass. at 821. The ruling below is not vulnerable on any such account.[8] As to the substance, it has long been held that a default may be "solid" although not wilful in the sense that the defendant acted with a purpose to delay or confuse or frustrate the disposition of the case. It is enough that the defendant has not acted as a responsible person in the face of the demand of lawful authority. In *Commonwealth* v. *Francis*, 374 Mass. 750, 754, appeal dismisssed, 439 U.S. 805 (1978), a solid default was found where the defendant negligently

---

[5]This was required at the time. See *Commonwealth* v. *Johnson*, 28 Mass. App. Ct. 453, 458 (1990). But Cf. *Commonwealth* v. *Ramirez*, 407 Mass. 553, 554-557 (1990).

[6]The defendant also said he had called between 1:30 and 2:00 attempting but failing to reach his counsel. This was not verified.

[7]Stay of sentence was denied by the trial judge and was also denied by a single justice of this court. We are informed that at the date of oral argument of the present appeal, the defendant had served his one-year sentence of incarceration.

[8]The judge filed findings and rulings as recommended for nonroutine cases in *Commonwealth* v. *Coughlin*, 372 Mass. at 822 n.7. See also *Commonwealth* v. *Bartlett*, 374 Mass. 744, 746 n.3 (1978).

failed to inform the court of a change of address to which the clerk had directed a notice to appear. See also *Commonwealth* v. *O'Clair*, 374 Mass. 759, 764, appeal dismissed, 439 U.S. 805 (1978). In *Commonwealth* v. *Espinoza*, 28 Mass. App. Ct. 65, 67 (1989), the defendant's lateness in appearing, held to amount to a solid default, was occasioned by his choosing to await his employer's permission to leave his job to make the trip to court. "Tardiness for a court appointment can, by itself, be quite sufficient to produce the confusion and delay warned against in *Commonwealth* v. *Coughlin*, 372 Mass. at 821." 28 Mass. App. Ct. at 69.[9]

In the present case the implications are severe against the defendant if his claim of misunderstanding was disingenuous, as the judge on the scene, "not required to credit the defendant's explanation" and believing that it "lacked the ring of plausibility," see *Espinoza* at 69, could conclude. The defendant, indeed, offered little concrete detail that might buttress his story. Even accepting that the defendant had misunderstood, and that his misunderstanding was itself excusable, the judge could conclude that one acting responsibly would have managed to appear at 2:00. That is what the judge meant when she spoke of the flaw in the defendant's own conduct. See *Commonwealth* v. *Preston*, 10 Mass. App. Ct. 807, 809 (1980). Cf. *Espinoza* at 69 (defendant "consciously disregarded the duty to be present").

That another judge, acting in discretion, might have palliated the defendant's error to the extent, perhaps, of forfeiting his bail without going further, does not suggest that the judge herein exceeded her discretion in imposing the original sentences.

*Judgments affirmed.*

*Andrew Silverman*, Committee for Public Counsel Services, for the defendant.

*James W. Sahakian*, Assistant District Attorney, for the Commonwealth.

---

[9]For contrasting authority where the Commonwealth, not the defendant, was chargeable with the defendant's nonattendance, and the default was set aside, see *Commonwealth* v. *Bartlett*, 374 Mass. 744, 748 (1978). A case of a defendant's wilful default intended to frustrate proceedings is *Commonwealth* v. *Higgins*, 23 Mass. App. Ct. 552, 558-559 (1987). Cf. *Commonwealth* v. *Preston*, 10 Mass. App. Ct. 807, 810 (1980).