**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tamara Lenise MARTIN, Defendant–Appellant.**

**No. 03–4391.**

United States Court of Appeals, Fourth Circuit.

Aug. 5, 2004.

Argued: June 2, 2004.

Decided: Aug. 5, 2004.

**ARGUED:** Linda Jayne Stowers, Winston–Salem, North Carolina, for Appellant. Randall Stuart Galyon, Assistant United States Attorney, Office Of The United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

Before MOTZ and KING, Circuit Judges, and David R. HANSEN, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Judge MOTZ wrote the opinion, in which Judge KING joined. Senior Judge HANSEN wrote a separate opinion concurring in the judgment and joining in the opinion except as to Part IV.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Tamara Lenise Martin appeals the district court's calculation of her criminal history category. She contends that the court erred in including a prior state sentence for misdemeanor larceny, which had been imposed by a North Carolina district court, and was being considered de novo by a North Carolina superior court at the time of the federal sentencing. Because execution of the state sentence was stayed pending the trial de novo, the district court erred in attributing two criminal history points to that prior sentence pursuant to U.S. Sentencing Guidelines Manual

§ 4A1.1(b) (2002); rather, it should have assessed only one criminal history point under § 4A1.1(c). However, because this error was harmless, we affirm.

## I.

On December 4, 2002, Martin pleaded guilty in federal court to bank robbery, in violation of 18 U.S.C. § 2113(a) (2000). In calculating its sentencing recommendation for Martin, the Probation Office prepared a presentence report in which it assigned her five criminal history points. Two of these points were attributable to the prior sentence of a North Carolina district court for misdemeanor larceny. In that case, Martin had originally been charged with "Felonious Larceny by an Employee," but on December 6, 2002, Martin pleaded guilty in a North Carolina district court to misdemeanor larceny and was sentenced to sixty days imprisonment. The record does not disclose whether Martin served any portion of that sentence.

Within ten days, Martin exercised her statutory right to trial de novo in the state case by filing a timely notice of appeal to a North Carolina superior court. The case was still pending in superior court when the Probation Office prepared its presentence report in Martin's federal case and remained pending at the time of sentencing. (Approximately a month after sentencing, the State dismissed the misdemeanor larceny charge "with leave" because Martin failed to appear for the superior court criminal proceeding. Thus, although a basis for her federal sentence, Martin has no conviction or sentence for misdemeanor larceny under North Carolina law.)

At sentencing in the case at hand, Martin objected to the presentence report, contending that the Probation Office improperly included the sentence attributable to her state misdemeanor larceny conviction in calculating her criminal history category. She argued that the Sentencing Guidelines did not contemplate an "appeal" from a lower trial court to a superior trial court for a trial de novo, and that under North Carolina law, once a defendant exercises her right to a trial de novo, the lower court conviction becomes a nullity for all purposes. Although the district court found Martin's argument "interesting," it ultimately chose to adopt the calculation recommended in the presentence report.

So with five criminal history points, Martin was categorized as a Category III offender, and with an offense level of twenty-two, her applicable guideline range was fifty-one to sixty-three months imprisonment. U.S.S.G. ch. 5, pt. A. The district court imposed a sentence of fifty-two months imprisonment.

## II.

The question before us is whether a prior sentence imposed by a North Carolina district court pending a trial de novo in a North Carolina superior court qualifies as a "prior sentence of imprisonment" under the United States Sentencing Guidelines. U.S.S.G. § 4A1.1(b). Before turning to that question, we must first understand how the North Carolina criminal trial system operates.

North Carolina, like many other states, has a "two-tier" system of trial courts for some criminal offenses.[1] Specif-

1. In addition to North Carolina, approximately half of the states appear to employ some type of two-tier system. *See Colten v. Kentucky,* 407 U.S. 104, 112 n. 4, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); David A. Harris, *Justice Rationed in the Pursuit of Efficiency: De Novo Trials in the Criminal Courts,* 24 Conn. L.Rev. 381, 382–83 (1992).

ically, all crimes classified as misdemeanors under North Carolina law are subject to a mandatory two-tier system consisting of district courts ("first tier") and superior courts ("second tier"). *See* N.C. Gen.Stat. §§ 7A–271, 7A–272(a) (2003). Thus, the State must prosecute all misdemeanors in a state district court in the first instance, and a defendant cannot bypass this district court prosecution. *See State v. Martin*, 97 N.C.App. 19, 387 S.E.2d 211, 213 (1990).

■ In district court, defendants must either plead guilty or submit to a bench trial. *Cf.* N.C. Gen.Stat. § 7A–196(b) ("[T]here shall be no jury trials in the district court."). If a defendant is acquitted, all criminal proceedings are terminated. *See State v. Harrell*, 279 N.C. 464, 183 S.E.2d 638, 639–40 (N.C.1971). If, on the other hand, a defendant either pleads guilty or is convicted after a bench trial, she has an absolute right to "appeal" to a superior court and receive a trial de novo with a jury. N.C. Gen.Stat. § 15A–1431(b); *State v. Sparrow*, 276 N.C. 499, 173 S.E.2d 897, 902 (1970). A trial de novo in a superior court is the defendant's *only* option; North Carolina law provides no avenue for appellate review of the proceedings of a state district court. *State v. Golden*, 40 N.C.App. 37, 251 S.E.2d 875, 877 (1979).

■ If a defendant chooses to file a "notice of appeal" with a superior court, the district court conviction is automatically nullified for most purposes. *Sparrow*, 173 S.E.2d at 902 (explaining that a district court judgment is "completely annulled"); *see also Blackledge v. Perry*, 417 U.S. 21, 22, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (explaining that under the North Carolina statutory scheme, "[w]hen an appeal is taken, . . . the slate is wiped clean; the prior conviction is annulled, and the prosecution and the defense begin anew in the Superior Court"). As for the corresponding sentence, the appeal "stays the execution of portions of the judgment relating to fine and costs . . . [and] portions of the judgment relating to confinement when the defendant has complied with conditions of pretrial release." N.C. Gen.Stat. § 15A–1431(f). If a defendant withdraws her appeal, a superior court will remand the case to the district court to execute the district court judgment. § 15A–1431(g), (h).

■ In superior court, the defendant is entitled to a trial de novo, without incurring any prejudice, or even effect, from the district court proceeding. *See* § 15A–1431(b); *State v. Thompson*, 2 N.C.App. 508, 163 S.E.2d 410, 412 (1968); *cf. State v. Ferrell*, 75 N.C.App. 156, 330 S.E.2d 225, 226–27 (N.C.Ct.App.1985) (holding that a superior court "committed prejudicial error by permitting the State to question the defendant regarding his failure to testify in the district court trial") (internal quotation marks omitted). A defendant need not demonstrate error in the district court, nor may a superior court give the judgment of a district court any weight. *See Sparrow*, 173 S.E.2d at 902 ("When an appeal of right is taken to the Superior Court, in contemplation of law it is as if the case had been brought there originally and there had been no previous trial."); *see also Blackledge*, 417 U.S. at 22, 94 S.Ct. 2098. A superior court likewise is in no way bound by the sentence imposed by a district court, and is free to impose what punishment it sees fit. *Sparrow*, 173 S.E.2d at 903. Similarly, the State is not bound by any plea agreement reached in district court and is permitted to pursue the original charges, even if they represent a felony offense. N.C. Gen.Stat. §§ 7A–271(b), 15A–1431(b); *State v. Fox*, 34 N.C.App. 576, 239 S.E.2d 471, 473 (1977).

The purpose of the two-tier system is to "provide [ ] simple and speedy trials of

misdemeanor cases in the District Court." *State v. Smith,* 312 N.C. 361, 323 S.E.2d 316, 329 (1984). To achieve such efficiency, district courts do not supply the same safeguards available in superior courts. For example, North Carolina district courts do not afford defendants the right to a jury trial, N.C. Gen.Stat. § 7A–196(b), while all defendants, regardless of the severity of their crimes, are entitled to a twelve-person jury trial in superior court, § 15A–1201. Moreover, North Carolina district courts do not engage in formal plea colloquies prior to accepting guilty pleas, N.C. Gen.Stat. art. 58, official cmt. ("[I]t is clearly expected the [guilty plea] process should be less formal and not subject to the procedural restrictions placed upon pleas of guilty or no contest in superior court."); whereas, superior courts must comply with statutorily-mandated procedures to ensure pleas are knowing and voluntary, *see* § 15A–1022. And, unlike superior courts, North Carolina district courts are not courts of record and there is no avenue for appellate review of their judgments. *Sparrow,* 173 S.E.2d at 903; *see Golden,* 251 S.E.2d at 877.

With this understanding of the two-tiered North Carolina system in mind, the details of which are undisputed, we turn to the sentence at issue here.

## III.

Section 4A1.1(b) of the United States Sentencing Guidelines instructs a sentencing court to "[a]dd 2 points for each prior sentence of imprisonment of at least sixty days" and not exceeding one year and one month. U.S.S.G. § 4A1.1(b). Section 4A1.2(a)(1) defines a "prior sentence" as one "previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere,* for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Section 4A1.2 also directly addresses various dispositions, and specifies when, and if, a sentencing court should include sentences arising from such dispositions in a defendant's criminal history calculation. *See, e.g.,* § 4A1.2(d), (f)-(j), (*l*). In a comment to this provision, the Sentencing Commission admonishes that "prior sentences, not otherwise excluded, are to be counted in the criminal history score." U.S.S.G. § 4A1.2, cmt. background.

## A.

The Guidelines do not specifically address dispositions arising from a two-tier criminal trial system like that employed by North Carolina and other states. Perhaps because of this omission, both the Government and Martin strive to force Martin's sentence into one of the categories that § 4A1.2 does expressly address. On the one hand, the Government argues that § 4A1.2(*l*), which provides that "[p]rior sentences under appeal are counted except as expressly provided below," controls the case at hand. On the other, Martin contends that her sentence is covered under § 4A1.2, cmt. n. 6, which excludes certain reversed or vacated convictions. Neither of these categories, however, adequately describes the sentence at issue here.

Although North Carolina law refers to the request for a trial de novo in the superior court as an "appeal," *see* N.C. Gen.Stat. § 15A–1431, the term "appeal" is a misnomer. Black's Law Dictionary defines an "appeal" as a "[r]esort to a superior (*i.e.* appellate) court to review the decision of an inferior (*i.e.* trial) court or administrative agency." Black's Law Dictionary 96 (6th ed.1990). But in "appealing" from the North Carolina district court to superior court, Martin did not seek (and indeed could not seek) review of the district court proceeding or disposition; rather, she requested (and was only

entitled to request), a trial de novo irrespective of the proceedings or disposition in the "inferior" court. *See ante* at 356–57. Thus, despite the state nomenclature assigned to the mechanism triggering a new trial (which the Government properly recognizes does not control here), it is clearly not, as the Supreme Court has recognized in similar circumstances, a true "appeal." *See Colten,* 407 U.S. at 115, 92 S.Ct. 1953 (recognizing that under Kentucky's two-tier scheme "the 'appeal' is in reality a trial de novo").

Martin's contention that her conviction was "vacated," and thus should be excluded under § 4A1.2, cmt. n. 6, must also be rejected. As an initial matter, Martin's conviction was not technically "vacated" as that term is commonly understood. "Vacate" means "[t]o render an act void; as, to vacate an entry of record, or a judgment." Black's Law Dictionary 1548 (6th ed.1990). And a judgment that is "void," as opposed to one that is merely "voidable," "is nugatory and ineffectual so that nothing can cure it." *Id.* at 1573. Although Martin's district court judgment was nullified for most purposes, *see ante* at 356, it was not "void ab initio" as Martin claims. Rather, if Martin had chosen to withdraw her request for a trial de novo, the superior court would have remanded her case to the district court to execute the previously entered judgment. N.C. Gen. Stat. § 15A–1431(g), (h). Thus, Martin's conviction was not technically "void" or "vacated."

Moreover, even if her conviction could roughly be characterized in such a manner, it is nevertheless not the type of vacated conviction warranting exclusion under the Guidelines. The commentary to the Guidelines only excludes convictions vacated "because of errors of law or because of subsequently discovered evidence exonerating the defendant," or those that were "ruled constitutionally invalid in a prior case." U.S.S.G. § 4A1.2, cmt. n. 6. None of these circumstances are present in the case at hand.

## B.

Although Martin's state misdemeanor larceny sentence was not "under appeal" pursuant to § 4A1.2(1), or the result of a "vacated" conviction pursuant to § 4A1.2, cmt. n. 6, it does fall within one of the other types of dispositions expressly discussed in § 4A1.2; the "execution of [Martin's] sentence was totally . . . stayed" under § 4A1.2(a)(3).

Under North Carolina law, appeal to a North Carolina superior court for a trial de novo *"stays* the execution of portions of the judgment relating to fine and costs . . . [and] *stays* portions of the judgment relating to confinement when the defendant has complied with conditions of pre-trial release." N.C. Gen.Stat. § 15A–1431(f) (emphases added).

▮ Of course, whether Martin's sentence was "stayed" for the purposes of § 4A1.2(a)(3) is a question of federal law. *See, e.g., United States v. Stewart,* 49 F.3d 121, 123 n. 3 (4th Cir.1995). Nonetheless, state law can be informative for the limited purpose of determining the effect of the state court's sentence. *See United States v. Compian–Torres,* 320 F.3d 514, 516 (5th Cir.2003). And, in this instance, as the Government itself concedes, the state court designation accurately depicts the state of Martin's sentence during the pendency of her trial de novo in superior court.

"To 'stay' an order or decree means to hold it in abeyance, or refrain from enforcing it." Black's Law Dictionary 1413 (6th ed.1990). Once a defendant requests a trial de novo in North Carolina superior court, the state district court judgment is

held in abeyance—it is not executed, nor is it technically vacated. Rather, as· explained earlier, in the event that Martin chooses to withdraw her request for a trial de novo, the superior court will remand her case to the district court to execute the heretofore "stayed" sentence. N.C. Gen. Stat. § 15A–1431(g), (h).

■ Because Martin's misdemeanor larceny conviction in North Carolina district court was one "for which the . . . execution of sentence was totally . . . stayed," it should have been "counted as a prior sentence under § 4A1.1(c)." U.S.S.G. § 4A1.2(a)(3). That section, unlike § 4A1.1(b) (upon which the district court relied to assign Martin two criminal history points), only allots *one* criminal history point for each prior sentence. U.S.S.G. § 4A1.1(c). Thus, the district court improperly calculated Martin's criminal history by assigning Martin five criminal history points rather than four.[2] Nevertheless, this error was harmless; offenders with four or five criminal history points are both classified as Category III offenders, *see* U.S.S.G. ch. 5, pt. A., leaving the applicable guideline range unchanged.

## IV.

Although we ultimately uphold the inclusion of Martin's state misdemeanor larceny sentence in calculating her criminal history, as mandated by the Guidelines, we are cognizant that counting the state sentence at issue here—a sentence imposed upon an adjudication of guilt in the first tier of a two-tier state system and awaiting a trial de novo in the second tier—in a defendant's federal criminal history category could have significant and troubling consequences. Indeed, there are compelling reasons not to count these dispositions at all, or at the very least, to limit their use to circumstances in which the criminal history category does not adequately reflect the seriousness of a defendant's past criminal history under U.S.S.G. § 4A1.3.

As an initial matter, the adjudication and sentence arising out of the first tier merely constitute an interim disposition in what is, in reality, a bifurcated trial system, and as such, lack any semblance of finality. *See, e.g., Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 309, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) (agreeing that "[w]hile technically [the defendant] is 'tried again,' the second stage proceeding can be regarded as but an enlarged, fact-sensitive part of a single, continuous course of judicial proceedings . . .") (internal quotation marks and citation omitted). Moreover, the first-tier proceeding lacks a number of procedural and constitutional safeguards normally afforded to criminal defendants, casting substantial doubt on the reliability of the resulting interim disposition. *See ante* at 357. Indeed, the Supreme Court has candidly acknowledged that these first-tier "inferior courts are not designed or equipped to conduct error-free trials, or to insure full recognition of constitutional freedoms."

2. We note that the same result could be warranted for another reason; Martin's state misdemeanor larceny sentence may not constitute a "prior sentence of imprisonment" under § 4A1.1(b). "To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time)." U.S.S.G. § 4A1.2, cmt. n. 2. As noted above, we cannot determine from the record whether Martin served any portion of the sixty-day sentence imposed by the North Carolina district court. If, in fact, she did not actually serve at least a portion of that sentence, her misdemeanor larceny sentence would not constitute a "sentence of imprisonment" under § 4A1.1(b), and thus could only be accorded one criminal history point as a "prior sentence not counted in (a) or (b)" under § 4A1.1(c). U.S.S.G. § 4A1.1(c); *see also United States v. Murphy,* 241 F.3d 447, 459 (6th Cir.2001).

*Colten,* 407 U.S. at 117, 92 S.Ct. 1953 (internal quotation marks and citation omitted).

Even more troubling, however, basing federal sentences on convictions obtained in first-tier courts that do not afford defendants any right to a jury trial may render two-tier state systems unconstitutional in those instances in which the constitutional right to a jury trial is implicated. Although the Supreme Court has held that the absence of a jury in the first tier, as long as one is eventually provided, does "not unduly burden[ ]" a defendant's constitutional right to a jury trial, in doing so, it presumed that virtually no collateral consequences would result from a judgment rendered in a first-tier court. *Ludwig v. Massachusetts,* 427 U.S. 618, 624–30, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976); *see also Lydon,* 466 U.S. at 310, 104 S.Ct. 1805 (stating that "virtually nothing can happen to a defendant at a first-tier trial that he cannot avoid" because "[o]nce the right to a trial de novo is exercised, the judgment at the bench trial is 'wiped out' "); *Colten,* 407 U.S. at 119–20, 92 S.Ct. 1953 (stating that "a defendant can bypass the inferior court simply by pleading guilty and erasing immediately thereafter any consequence that would otherwise follow from tendering the plea"). Mandating inclusion in a defendant's criminal history of a sentence imposed pursuant to a conviction in the first tier, when the defendant has affirmatively exercised her absolute right to a de novo jury trial in the second tier, would seemingly constitute a significant collateral consequence. Thus, applying the Guidelines as written raises serious questions about the constitutional validity of the two-tier system (in instances where a defendant's jury trial right is implicated) both in North Carolina and in the many other states employing similar systems.

Despite these grave, and perhaps unintended, consequences, we believe that the Guidelines' admonition that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score," U.S.S.G. § 4A1.2, cmt. background, requires the result we reach here. Accordingly, we affirm. But, in doing so, we suggest that the Sentencing Commission carefully consider, in light of the ramifications discussed above, whether, and to what extent, state interim sentences arising out of two-tier criminal trial systems should be included in a defendant's criminal history category.

*AFFIRMED*

HANSEN, Senior Circuit Judge, concurring in the judgment and joining in the opinion except as to Part IV.

I readily concur in the judgment and in all of the court's opinion except for Part IV. I respectfully decline to join Part IV because, in the circumstances of this case, Martin's right to a jury trial was not violated. I would therefore not render an advisory opinion as to potential constitutional infirmities in theoretical future cases. Further, I am unwilling to assume, as the court apparently does, that the Sentencing Commission has not already considered what effect should be given to a first-tier state court conviction in a two-tier state system. Given the fact that about half of the States employ such a system, I find it hard to believe that the Commission would have overlooked the matter for fifteen years, particularly when it has considered and provided for even more rare events, e.g., tribal, military, and foreign convictions.