**UNITED STATES of America,
Appellee,**

v.

**Germain FLORENTINO, Defendant,
Appellant.**

**No. 03–1067.**

United States Court of Appeals,
First Circuit.

Heard Aug. 3, 2004.

Decided Sept. 29, 2004.

J. Thomas Kerner, by appointment of the court, for appellant.

Brian J. Leske, Assistant United States Attorney, Appeals Unit, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

Before BOUDIN, Chief Judge, TORRUELLA and DYK,* Circuit Judges.

BOUDIN, Chief Judge.

Germain Florentino was indicted in federal court on multiple counts for participating in his brother's drug distribution ring in Dorchester, Massachusetts, during 1999 and 2000. On May 29, 2002, Florentino pled guilty to three counts of possession with intent to distribute, and distribution, of heroin in violation of 21 U.S.C. § 841(a)(1) (2000), and to one count of illegally re-entering the United States after being deported, in violation of 8 U.S.C. § 1326(a) (2000).

At sentencing, the district court classified Florentino as a career criminal under the federal sentencing guidelines, U.S.S.G. § 4B1.1 (2002), because of prior state drug-distribution convictions in 1990 (Dorchester district court) and 1993 (Quincy district court). The classification gave him automatically a base offense level of 32 (which was reduced by three levels because of the guilty plea) and a criminal history category of VI. *Id.* §§ 3E1.1;

* Of the Federal Circuit, sitting by designation.

4B1.1(b).[1] This produced a range of 151 to 181 months, and the district court sentenced Florentino to 151 months in prison.

On appeal, Florentino renews his claim, made and rejected in the district court, that his 1990 conviction should not have been counted as a prior felony conviction. Had it not been, his guideline range would have been lower. We conclude that the 1990 conviction did count, mooting Florentino's other claim of error (that he was not a leader of the criminal enterprise) which relates only to the alternative calculation needed if he were not a career offender.

The dispute as to whether to count the 1990 Dorchester conviction arises out of the unusual Massachusetts two-tier trial system in place in 1990 but later abolished. Under this system, a defendant was entitled to a six-person jury trial in state district court but could instead elect a bench trial. If dissatisfied with the result of the bench trial, the defendant could then "appeal" and receive a *de novo* jury-of-six trial also in district court. Mass. Gen. Laws ch. 218 §§ 26A, 27A(a), (c) (1990); *id.* ch. 278 § 18; *see United States v. Morillo*, 178 F.3d 18, 21 & n. 5 (1st Cir. 1999); *Commonwealth v. Duquette*, 386 Mass. 834, 438 N.E.2d 334, 337 (1982).

At the "first tier" proceeding in 1990, Florentino (represented by counsel) was convicted after a bench trial and given a two-year prison sentence, six months of which was suspended. Florentino appealed from his conviction seeking a *de novo* trial by jury. On October 16, 1990, he defaulted on his appeal and a default warrant issued, but it seems that Florentino was not then apprehended and never served any sentence arising from his 1990 conviction.

■ Whether Florentino's 1990 conviction counts, despite his later defaulted appeal, depends on what the pertinent federal guideline means by "conviction" and is therefore a question of federal law. *See United States v. Mateo*, 271 F.3d 11, 15 (1st Cir.2001). Still, how state law treats an event in its own court system is relevant to deciding how to classify the event for federal purposes. Here, we must ask both whether Florentino's first-tier bench-trial conviction should be treated as a conviction for federal purposes and, if so, whether the appeal wiped it out. The subject was touched on but not resolved in *Cofske v. United States*, 290 F.3d 437, 441–42 (1st Cir.2002).

At the first-tier trial, the prosecutor was required to prove his case beyond a reasonable doubt, *see Rubera v. Commonwealth*, 371 Mass. 177, 355 N.E.2d 800, 805 (1976) (describing the pre–1979 system with *de novo* trial in Superior Court); counsel appeared for the defendant; and the proceeding resulted in a guilty finding and a prison sentence that the state would have carried out. Absent an appeal this would be a conviction both in name and in substance. *Cf. United States v. Roberts*, 39 F.3d 10, 12–13 (1st Cir.1994).

Admittedly, in some cases (and perhaps in Florentino's case) the defendant at the first tier probably had less than the usual incentive to present his full case and might instead have used the first-tier trial for discovery or to gain information about likely sentences. *See Cofske*, 290 F.3d at 441–42.[2] But if the evidence held back by the

---

**1.** The career offender guideline applies where the defendant commits a drug crime or violent felony and "has at least two prior felony convictions" for such crimes. U.S.S.G. § 4B1.1(a). The base offense level applicable is derived from a table in the guideline keyed to the statutory maximum for the crime charged. *Id.* § 4B1.1(b).

**2.** An affidavit offered by Florentino says that the first tier was often used for discovery, in part because discovery was otherwise mini-

defendant at the first tier would improve his chances, the defendant had a full opportunity for a second trial. Thus, failure to carry through an appeal could well indicate that the defendant had done about as well at the first tier as he could expect to do from a second trial.

The harder problem, on which we reserved judgment in *Cofske,* is the impact of the appeal. By their terms, the Massachusetts statutes provide only for "appeal" and "trial de novo." Mass. Gen. Laws ch. 278 § 18; *id.* ch. 218 § 27A. But Massachusetts case law, which is the same thing as a statute for our purposes, describes such appeals as immediately "vacat[ing]" the conviction. *Duquette,* 438 N.E.2d at 342; *see also Wilson v. Honeywell, Inc.,* 409 Mass. 803, 569 N.E.2d 1011, 1015 (1991). Yet looking from labels to substance, the Massachusetts decisions are less emphatic.

On the one hand, an appeal under the old Massachusetts regime made immaterial any first-tier trial errors, *Duquette,* 438 N.E.2d at 342, and the appealed conviction was said to lack "sufficient finality in the scheme of the two-tier system to be considered a conviction for impeachment purposes." *Wilson,* 569 N.E.2d at 1015. On the other hand, the bench conviction "was not a nullity for all purposes," *id.* at 1015 n. 3; for example, it could be considered for purposes of revoking probation and revoking drivers' licenses, *see id.*

Moreover, and perhaps more pertinent, if a defendant withdrew his appeal the district court could order him to comply

with the original bench-trial sentence. Mass. Gen. Laws ch. 278, § 25. Similarly, if the defendant seeking a *de novo* trial failed to prosecute his initial appeal, the court at the second tier could default the defendant and impose the original sentence upon him "for the crime of which he was convicted," *id.* § 24, although case law required some minimal process to ensure that the default was "solid." [3] Florentino says that the scheme has now been repealed but it is hard to see why this matters in judging his conviction's character at the time it occurred.

Thus, judged by consequences rather than labels, the appeal to the second tier did not entirely undo the conviction under Massachusetts law; the conviction might better be described as being half asleep after the lodging of the appeal and subject to being fully re-awakened if the appeal were abandoned. The question then is how the guidelines language, and underlying guidelines policy, should treat such a sequence of events for purposes of federal sentencing.

The guidelines could be read as resolving the matter against Florentino. The sentence-counting rules for criminal history calculations, U.S.S.G. § 4A1.2, made applicable to the career-offender provisions by cross reference, *id.* § 4B1.2 application note 3, address "Reversed, Vacated, or Invalidated Convictions" and "Convictions Set Aside or Defendant Pardoned [for reasons other than innocence or legal error]." The guideline commentary says that the former are counted unless the

---

mal. Florentino says he got just such barebones discovery from the state in his 1990 case. Florentino also seeks to paint the first tier as a discovery mechanism by noting that shortly after the two-tier system was abolished, provision was made for increased discovery obligations for the state.

**3.** That is, entered based on the defendant's inexcusable conduct and not entered "casually or capriciously." *Commonwealth v. Parillo,* 29 Mass.App.Ct. 969, 561 N.E.2d 516, 518–19 (1990) (upholding default and imposition of original sentence for defendant's being 75 minutes late to jury session); *see also Commonwealth v. Coughlin,* 372 Mass. 818, 364 N.E.2d 210, 212–13 (1977).

conviction's undoing is because "of errors of law or ... subsequently discovered evidence exonerating the defendant," *id.* § 4A1.2 application note 6; convictions in the latter category count unless they were "expunged," *id.* § 4A1.2 application note 10. Expunged convictions never count. *Id.* § 4A1.2(j).

■ If Florentino's 1990 conviction is viewed as one "reversed, vacated, or invalidated" by his appeal, this was done automatically and not because of error of law or evidence of innocence. Accordingly, under the guideline commentary language, the conviction would still count for federal sentencing purposes. U.S.S.G. § 4A1.2 application note 6; *see, e.g., United States v. Martin,* 378 F.3d 353, 358 (4th Cir.2004); *United States v. Campbell,* 167 F.3d 94, 98 (2d Cir.1999).

■ Nor was Florentino's conviction ever "expunged"—a term ordinarily reserved for instances in which the conviction is treated in all respects as if it had never occurred.[4] This is not true of a conviction held partly in abeyance and subject to being reinstituted. *See United States v. Cuello,* 357 F.3d 162, 167 (2d Cir.2004) (expungement procedures must erase all record of a conviction or preclude its future use by courts) *cert. denied,* —— U.S. ——, 125 S.Ct. 113, —— L.Ed.2d —— (2004) (No. 04-5257); *see also United States v. Cox,* 245 F.3d 126, 130 (2d Cir. 2001). Nor has the conviction been expunged under the standard established by First Circuit precedent, whereby expungement is determined "by considering whether the conviction was set aside because of

innocence or errors of law." *United States v. Dubovsky,* 279 F.3d 5, 8 (1st Cir.2002); *see also United States v. Gonzalez–Arimont,* 268 F.3d 8, 14–15 (1st Cir.2001).

Still, this guideline language, although broad, aims at the distinction between successful merits appeals that undo convictions (mostly for errors of law) and pardons or other devices (unrelated to innocence) for restoring rights. The *de novo* jury trial is neither of these mechanisms, and it is doubtful that the guideline drafters had in mind the idiosyncracies of such a two-tier system. If the question were whether to count a first-tier conviction that was actively being appealed to the second tier, we can imagine arguments— we do not resolve them—for and against counting that conviction.

But if the guideline commentary may not resolve the matter against Florentino, guideline policy clearly does so. The purpose of counting convictions is to measure criminal history, and it is hard to see why a defendant who is convicted at the first tier and walks away from a lodged appeal should not be treated as "convicted" for Guidelines purposes. If Florentino had never appealed, his conviction would count. In light of the consequences of default, this decision not to pursue his appeal tends to enhance—and certainly does not detract from—our confidence in the conviction as a reliable indicator of Florentino's guilt, *cf. Roberts,* 39 F.3d at 12.

Nor do we think it matters whether, as Florentino claims, his first-tier conviction was not officially ruled to be "solid" under Massachusetts law, so that a Massachu-

---

4. *See, e.g., United States v. Crowell,* 374 F.3d 790, 792 (9th Cir.2004) (stating that while a vacatur "nullifies the conviction and its attendant legal disabilities, ... a defendant who seeks expungement requests 'the judicial editing of history'"); *United States v. Noonan,* 906 F.2d 952, 956–57, 960 (3d Cir.1990);

*Commonwealth v. Balboni,* 419 Mass. 42, 642 N.E.2d 576, 578 (1994) (noting that the term expungement "refers to ... an order to remove and destroy records 'so that no trace of the information remains'" (omission in original))

setts court could reimpose the earlier sentence. *See* note 3, above. Federal law governs in deciding whether to count the 1990 conviction under the guidelines. From our standpoint, the conviction counts in light of the abandonment of the appeal unless the defendant shows some good reason why it should not.

No such good reason exists. After Florentino filed his appeal from the 1990 conviction, he attended a hearing on the case in state court on September 6, 1990, at which the new trial was set for October 16; and he then failed to appear for trial on that date but instead—as the government observes—resumed his career of drug dealing. It thus appears that Florentino had notice of the new trial and decided not to pursue this effort.

■ Florentino objects that we know about these details of the default only because the government has now supplied us with the docket sheet from the state court—showing both his presence at the September 6 hearing and the fact that the new trial date was there set for October 16. But we are entitled to take notice of the records of relevant court proceedings, *see, e.g., Maher v. Hyde*, 272 F.3d 83, 86 n. 3 (1st Cir.2001); *E.I. du Pont de Nemours & Co. v. Cullen*, 791 F.2d 5, 7 (1st Cir. 1986), and hearsay concerns are not a bar.[5] Even if we ignored these details, it would be enough for us that Florentino has never suggested any excuse for failing to appear. Thus, we have no occasion to decide whether the 1990 conviction would count if Florentino had sought to establish at his sentencing hearing that the default was not solid.

Two final matters deserve brief mention. First, Florentino relies on *Costarelli v. Massachusetts*, 421 U.S. 193, 194, 95 S.Ct. 1534, 44 L.Ed.2d 76 (1975), which said of the two-tier system that the appeal "[i]n effect ... vacate[d] the [first-tier] judgment, leaving the defendant in the position of defendants in other States which require the prosecution to present its proof before a jury." This summary, in a case that had nothing to do with the guidelines, is perfectly consistent with what we have said above about Massachusetts law.

Second, based on the same underlying drug transaction, Florentino was convicted in 1990 of both possession with intent to distribute and conspiracy. Florentino asserts—mainly to indicate the unserious character of the first-tier proceeding—that the state district court had no authority to try a conspiracy charge. But limits on collateral attack aside, *see* U.S.S.G. § 4A1.2 application note 6; *United States v. Burke*, 67 F.3d 1, 2–3 (1st Cir.1995), the possession-with-intent charge itself constitutes a prior drug crime felony under the guidelines. Given that conviction, it is natural for an additional overlapping conspiracy charge not to have provoked much attention at the first-tier level.

*Affirmed.*

5. If this were necessary, the docket sheets would be covered by the public records exception to the hearsay rule, Fed.R.Evid. 803(8); *see United States v. Loera*, 923 F.2d 725, 730 (9th Cir.1991); *United States v. Vid-* *aure*, 861 F.2d 1337, 1340–41 (5th Cir.1988), but a court in sentencing matters is not strictly bound by hearsay rules, *see United States v. Rodriguez*, 336 F.3d 67, 71 (1st Cir.2003).