# United States Court of Appeals

## For the First Circuit

---

No. 04-2238

UNITED STATES OF AMERICA,

Appellee,

v.

MARLIN TURNER,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Torruella, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

---

Timothy G. Watkins, Federal Defender Office, for appellant.
Paul G. Casey, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief for
appellee.

---

February 15, 2006

---

**CYR, <u>Senior Circuit Judge</u>.** Marlin Turner appeals a Sentencing Guidelines ruling relating to his criminal history score, which took into account a prior juvenile adjudication in Tennessee. Although he filed a notice of appeal from the adjudication, it was neither pursued by Turner nor by the State. We affirm.

**I**

**<u>BACKGROUND</u>**

While a minor living in Franklin County, Tennessee, in 1998, Turner ran away from a juvenile offender program, and was subsequently arrested and arraigned in Franklin County Juvenile Court for theft and possession of a firearm. While detained in a juvenile facility in Rhea County, Tennessee, pending trial on these charges, Turner vandalized and attempted to set fire to his detention cell. Consequently, a second delinquency petition was lodged against him in the Rhea County Juvenile Court. Meanwhile, Turner had been adjudicated delinquent on the pending theft and firearm charges in Franklin County, where he was committed to a juvenile detention facility for an indefinite term.

On May 28, 1998, Turner appeared in Rhea County Juvenile Court for a bench trial on the pending arson charges. An attorney who had never handled a criminal delinquency case was appointed to represent him. The court-appointed counsel consulted with Turner before the bench trial commenced, and Turner executed a written

statement acknowledging his various procedural rights at trial, including the right to remain silent, to be represented by counsel, to review a copy of the charges against him, to present evidence in his own behalf, to cross-examine the State's witnesses, and to "appeal" from any adverse judgment, <u>viz.</u>, to receive a <u>de novo</u> jury trial in the circuit court. Tenn. Code Ann. §§ 37-1-121 to 129, 159(a).[1]  Following the hearing, Turner was found delinquent, beyond a reasonable doubt, then sentenced to an indeterminate commitment to a juvenile detention program, which was to run concurrently with the earlier Franklin County sentence.

Under the State's two-tier trial system, a defendant may opt for a bench trial in the juvenile court, with somewhat curtailed procedural protections, after which he may opt to appeal to the circuit court for a <u>de novo</u> jury trial.  Accordingly, Turner's counsel submitted a timely notice of appeal from the Rhea County judgment.  The district attorney informed Turner's counsel that the State would decide whether to proceed with the Rhea County appeal once the circuit court had ruled upon Turner's pending appeal from the earlier Franklin County adjudication.  When Turner's counsel learned that the circuit court had denied that pending appeal, he concluded that the State would not pursue the

---

[1]Although the state statute utilizes the label "appeal," the circuit court is not an appellate tribunal, but rather a <u>de novo</u> trial court.  Hereinafter, we employ the term "appeal" exclusively in this specialized sense.

Rhea County appeal, inasmuch as the sentences imposed under both judgments were to run concurrently. For some undisclosed reason, however, the circuit court never scheduled Turner's Rhea County appeal for a de novo trial.

While in juvenile detention, Turner threatened to kill President Clinton and the Clinton family. Upon reaching age 18, Turner was tried in federal district court and found guilty of that offense. Subsequently, while in custody for violating his supervised release, Turner assaulted a correctional officer, and was convicted. The presentence report recommended that the district court include the two Tennessee juvenile adjudications in its calculation of Turner's criminal history category ("CHC") under the Guidelines. Whereupon, Turner objected on the ground that the concurrent sentence imposed on his Rhea County conviction was neither final nor reliable, since the circuit court never acted upon his pending notice of appeal. The district court denied the objection and determined that both juvenile convictions should be considered in calculating Turner's CHC. On appeal, Turner challenges this aspect of the sentencing determination.

## II

## DISCUSSION

The district court's ruling on Turner's CHC is subject to de novo review. See United States v. Gonzalez-Arimont, 268 F.3d 8, 14 (1st Cir. 2001). The Guidelines require that we consider "any

sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the [] offense [of conviction]," U.S.S.G. § 4A1.2(a), which encompasses sentences imposed in juvenile adjudications, see id. § 4A1.2(d); Gonzalez-Arimont, 268 F.3d at 14.

Turner premises this appeal upon our decision in United States v. Florentino, 385 F.3d 60 (1st Cir. 2004) (involving Massachusetts' two-tier trial system). Like Tennessee, at one time Massachusetts had a two-tier trial system, pursuant to which criminal defendants were accorded a first-level bench trial with more limited procedural safeguards, as well as the right to lodge an appeal for a de novo jury trial. Unlike Tennessee, however, Massachusetts provided that the defendant's submission of a notice of appeal served immediately and automatically to vacate the first-tier conviction for most purposes. Id. at 63.[2] In contrast, Tennessee law expressly provides that the filing of a notice of appeal does not, in any sense, vacate the first-tier conviction. See Tenn. Code Ann. § 37-1-159(b) ("An appeal does not suspend the order of the juvenile court."); Anglin v. Mitchell, 596 S.W.2d 779, 789-90 (Tenn. 1980).

In affirming the district court decision to consider Florentino's first-tier conviction under the Guidelines, we noted

---

[2]Nevertheless, even then we noted that the Massachusetts courts did not treat the first-tier conviction as a "nullity for all purposes." Id.

that notwithstanding the labels employed by the state courts – that the notice of appeal "vacates" the first-tier conviction (<u>viz.</u>, as if it had never been entered) – in actuality the appeal merely rendered that conviction conditionally dormant (<u>viz.</u>, subject to reinstatement in the event the defendant, for example, withdrew or failed to prosecute his appeal). <u>Florentino</u>, 385 F.3d at 63 (describing the first-tier conviction as "half asleep"). Turning to the Guidelines' commentary, the <u>Florentino</u> panel observed that vacated convictions are to be counted unless their vacation resulted from some legal error or newly discovered evidence, whereas all other vacated convictions should be counted unless "expunged," <u>viz.</u>, treated as if a nullity <u>ab</u> <u>initio</u>. <u>Id.</u> at 64. The vacating of the Florentino first-tier conviction was neither the result of legal error nor newly discovered evidence (but merely the filing of a notice of appeal), and the conviction was simply dormant, rather than expunged. <u>Id.</u>

Furthermore, we noted that even if the Guidelines commentary adverted primarily to actual appellate reversals and expungements and did not anticipate the effects of an "appeal" in an idiosyncratic two-tier trial system, <u>see</u> <u>supra</u> note 1, Sentencing Guidelines policy plainly suggested that the Florentino first-tier conviction should be counted in assessing his criminal history. Given that the two-tier system accords defendants a right of appeal, as a counterweight to the more circumscribed procedural

protections prescribed in a first-tier bench trial, "it is hard to see why a defendant who is convicted at the first tier and walks away from a lodged appeal should not be treated as 'convicted' for Guidelines purposes." Florentino, 385 F.3d at 64-65 (noting that defendant must bear the burden to show "good reason" why his abandonment of the appeal should not be held against him). As Florentino's failure to appear at his de novo trial was left wholly unexplained, the first-tier conviction was properly counted under the Guidelines. Id. at 65.

Turner maintains that the Tennessee first-tier proceeding is somehow less procedurally sufficient than the corresponding proceeding in Massachusetts, hence his first-tier conviction constituted an inherently less reliable indicium of guilt. The sole support offered for this contention is the state statute which prescribes that the first-tier proceeding is to be "conducted by the court without a jury, in an informal but orderly manner." Tenn. Code. Ann. § 37-1-124(a) (emphasis added). However, the fact that the proceeding is "informal" discloses little about the adequacy vel non of the particular procedural safeguards accorded the defendant.

The record discloses that, after consulting with counsel, Turner voluntarily and knowingly signed an acknowledgment of his rights, including the right to remain silent, to be represented by counsel, to review a copy of the charges against him, to present

evidence in his own behalf and to cross-examine the State's witnesses, and to "appeal" from an adverse judgment, viz., to receive a de novo jury trial in the circuit court. Tenn. Code Ann. §§ 37-1-121 to 129, 159. Turner identifies no additional procedural safeguard (e.g., the right to formal discovery or to full motion practice) which was accorded Florentino under the Massachusetts system.

By their very nature, these first-tier proceedings are administratively streamlined, see Colten v. Kentucky, 407 U.S. 104, 114 (1972), and if the defendant thus has somewhat less than the usual incentive to present his full case at this preliminary stage, any such procedural limitations are fully mitigated by the right to a de novo trial at the second tier. See Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 310 (1984); Florentino, 385 F.3d at 62-63. Absent evidence of any particular and palpable procedural deficiencies in the juvenile hearing, Turner has not distinguished his case from Florentino in this respect. Finally, inasmuch as Turner was represented by counsel, his argument constitutes an impermissible collateral attack on a state court conviction based upon alleged procedural deficiencies. See United States v. Fraser, 388 F.3d 371, 375 (1st Cir. 2004) ("Even if the procedures used by the state court were somehow deficient, that would not warrant discounting the disposition . . . absent a claim, not made here, that the defendant was entirely without counsel.").

Turner next contends that while Florentino willfully failed to appear at his de novo trial, Turner's first-tier conviction remained extant through no fault of his own, and accordingly it was the State which failed to follow up on his timely appeal from the first-tier conviction. This contention is flawed as well.

First, this claim is entirely based upon Turner's counsel's alleged "understanding" that the State had affirmatively abandoned its efforts to impose the Rhea County sentence because, in the interim, the circuit court had affirmed the concurrent sentence on the Franklin County conviction, and thus the State would obtain no practical benefit by pursuing the Rhea County appeal. The record contains no support for counsel's subjective understanding, however.

The State district attorney advised Turner's counsel that he would not decide whether to respond to the Rhea County appeal until after the Franklin County appeal had been concluded, but Turner's counsel never received notification that the district attorney had chosen not to respond. Instead, when the circuit court failed to docket or schedule a de novo trial, Turner's counsel simply assumed that the State had abandoned its efforts to maintain the first-tier conviction. As the appellee, however, the State could not withdraw the appeal; rather, as the appellant, only Turner could do so. Thus, all Turner reasonably could assume,

-9-

without further consultation with the circuit court clerk, would be that, for some unidentified reason, the clerk had failed to docket a de novo trial date. Conceivably, such failure was due entirely to administrative oversight,[3] yet though fully aware of the omission, Turner presumably failed to contact the clerk to determine the status of his notice of appeal. See, e.g., Christopher v. Spooner, 640 S.W.2d 833, 836 (Tenn. App. 1982) (noting that parties should not be allowed to take advantage of a clerical oversight of which parties were fully aware). Thus, it is simply inaccurate to suggest that Turner was faultless; as the appellant, he bore the burden to utilize all reasonable measures to prosecute his appeal.

The Turner default is more consequential than the Florentino default under the Massachusetts two-tier system, since Turner's first-tier conviction did not become dormant after the filing of his notice of appeal, but remained in full effect. See Tenn. Code Ann. § 37-1-159(b) ("An appeal does not suspend the order of the juvenile court."). Consequently, Turner knew that mere filing of a notice of appeal did not undo his first-tier conviction, and that unless he could successfully prosecute an

---

[3]Once again, insofar as the Turner contention would require us to speculate about the reason the appeal was not docketed, it represents an impermissible collateral attack upon the validity of a state court conviction. See Fraser, 388 F.3d at 375; United States v. Burke, 67 F.3d 1, 3 (1st Cir. 1995) (noting that such collateral challenges "would hopelessly complicate sentencing under the federal Guideline[s]").

-10-

appeal and win a de novo trial and acquittal, his first-tier conviction would remain fully intact and in effect.

Turner would have the court disregard this essential difference between the Tennessee and Massachusetts systems, on the ground that the countability of a prior state sentence for Guidelines purposes constitutes a question of federal law.  See United States v. Mateo, 271 F.3d 11, 15 (1st Cir. 2001).  However, that may be, the manner in which "state law treats an event in its own court system is relevant to deciding how to classify the event for federal purposes."  Florentino, 385 F.3d at 62.  Thus, the Turner decision to allow the first-tier conviction to remain intact brings his case squarely within the failure-to-prosecute rule cited in Florentino.

**Affirmed**.